IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | |
|---|---|
| JARED SCHUELLER<br>Individually<br><br>           Plaintiffs,<br><br>     vs.<br><br>REMINGTON ARMS COMPANY, LLC,<br>And SPORTING GOODS PROPERTIES,<br>INC.<br><br>           Defendants. | Case No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs Jared Schueller individually, by and through his attorney, and for his claim for relief against Defendants, Remington Arms Company, LLC. and Sporting Goods Properties, Inc. state and allege as follows:

## PARTIES

1. Plaintiff Jared Schueller (hereinafter "Plaintiff") is a citizen and resident of Grafton, Walsh County, North Dakota.

2. Defendant Remington Arms Company, L.L.C.. (hereinafter "Remington") is a Delaware Corporation and is authorized to do business in the State of North Dakota. Service should be made upon its registered agent, CT Corporation System, 314 E. Thayer Avenue, Bismarck, North Dakota, 58501, unless Defendant Remington Arms Company, Inc. waives service pursuant to Rule 4(d), F.R. Civ. P. Defendant LLC assumed the assets and liabilities of Defendant Remington on or about July 1, 2011. In all respects, it is the successor of the corporation formerly known as Remington Arms Company, Inc.

3.     Defendant Sporting Goods Properties, Inc. (hereinafter "SGPI") is a Delaware

corporation and is not authorized to do business in the State of North Dakota. Service should be made upon the North Dakota Secretary of State's office located at 600 E. Boulevard Avenue, Department 108, Bismarck ND 58505 unless Defendant Sporting Goods Properties Inc. waives service pursuant to Rule 4(d), F.R.Civ. P.

### JURISDICTION, VENUE AND SERVICE OF PROCESS ALLEGATIONS

4. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 in that Plaintiff is a citizen of the State of North Dakota, and that the Defendants are all corporate citizen of the State of Delaware. Accordingly, there is complete diversity of citizenship between the parties, and the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

5. Venue is proper within the Northeastern Division because Plaintiff is a resident of Walsh County, North Dakota, and the incident which gives rise to this complaint occurred within Walsh County, North Dakota.

### COMMON ALLEGATIONS

6. Plaintiff Jared Schueller lives in Grafton, North Dakota with a mailing address of P.O. Box 363 Grafton North Dakota, 58237 and he is a citizen of the State of North Dakota.

7. Defendants, Remington, LLC and SGPI were, and are now engaged in the business of designing, manufacturing, assembling, distributing and selling firearms, and in this regard did design, manufacture, distribute, sell and, place into the stream of commerce, the Remington Model 710, .270 caliber bolt action rifle including the action, fire control system, and safety, bearing Serial Number 71177630 (hereinafter "rifle"), knowing and expecting that said rifle would be used by consumers and around members of the general public.

8. Prior to November 30, 1993, E. I. du Pont de Nemours and Company (hereinafter "DuPont") owned 100% of the stock in the company known as Remington Arms Company, Inc. (now SGPI). On or about November 30, 1993, Remington Arms Acquisition Corporation, Inc. (hereinafter "RACI") purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc. (now known as SGPI), including the corporate name. The

company formerly known as Remington Arms Company, Inc. changed its name to Sporting Goods Properties, Inc., and RACI changed its name to Remington Arms Company, Inc. SGPI retained certain non-income producing assets, some with significant environmental and other liabilities such that its net worth was reduced to a small fraction of its former so that SGPI may not be able to pay reasonable judgments in this and similar litigation.

9. At all times pertinent to this action SGPI and DuPont were and are the alter ego of each other and in essence constitute one legal entity in which SGPI operates as a division of DuPont. The separate incorporation of SGPI is a sham in that it is merely a corporate veil which insulates DuPont from liability for products manufactured and sold by SGPI. DuPont exerted, and currently exerts extreme influence, complete dominion and/or absolute control over the corporate activity and function of SGPI. DuPont's continued operation of SGPI as a separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on Plaintiffs herein and the general public. The conduct of DuPont and/or SGPI has harmed or will harm Plaintiffs and the general public, justifying piercing of the corporate veil resulting in DuPont being liable for the acts and omissions of SGPI as they are in reality one legal entity.

10. All Defendants are so intertwined contractually for the liabilities, past, present and future, of each other that they are, in fact, one entity and therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein. The Asset Sale/Purchase Agreement transferring the assets of SGPI to Remington and various revised or supplemental agreements spreads responsibility and authority for product liability claims among the three Defendants as it is unclear who bears the contractual liability for this claim.

11. Remington and/or DuPont expressly and impliedly agreed to assume certain debts and responsibilities, including the product liability of SGPI by the terms of the Asset/Sale Purchase Agreement as well as the continuing relationship between Remington, DuPont and SGPI. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

12. Remington continues in the design, manufacture, distribution and sale of all

Remington Arms product lines including the Remington Model 710 bolt action rifle, without any significant changes. Remington maintains the same plants, employees, organization, contracts, customers, suppliers, advertising, products and name acquired in the asset purchase. Remington acquired the entire company from SGPI through an asset/sale purchase in order to avoid and/or limit the liability resulting from an outright purchase of the stock from DuPont. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

13. Remington, DuPont and SGPI acted fraudulently with respect to the asset/sale purchase in that its purpose was to avoid and/or limit the responsibility of DuPont and/or Remington for the debts of SGPI, particularly its product liability. Consequently, DuPont and/or Remington are the corporate successors to the product liability claims asserted, now and in the future, against SGPI, including this particular lawsuit.

14. At all times pertinent to this action SGPI was an agent of DuPont acting in the course and scope of its agency relationship thereby making its principal, DuPont, liable for all of SGPI's acts and omissions, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

15. At all times pertinent to this action, agents of DuPont, acting within the course and scope of their agency relationship, controlled SGPI, thereby making SGPI's acts and omissions those of their principal, DuPont, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

16. On November 6, 2010, Plaintiff Jared Schueller (hereinafter "Schueller") had used his Remington M700 .770 Caliber Rifle to hunt that morning. After hunting, he returned to the location at the Grafton Armory where his father was attending a crafting show. Jared's father Steven put the rifle in the floorboard of the truck. After the show, Jared opened the passenger door of the truck and reached down to pick up the rifle to unload it. He grabbed the muzzle of the rifle and it suddenly and unexpectedly fired. The trigger was not pulled or contacted in any manner, but instead the rifle fired as a result of being moved due to forces exerted on the fire control system during this process. The bullet traveled through Jared's right hand and left thigh causing serious and permanent injury and scarring.

17. Remington Arms Co., LLC and Sporting Goods Properties, Inc., are collectively referred to herein as "Defendants."

18. Plaintiff Jared Schueller is bringing this action to recover damages from Defendants arising from Jared's personal injuries caused by this incident. Plaintiff's damages include past and future: medical expenses, physical pain and suffering; loss of earnings, impaired earning capacity, permanent disability, disfigurement; loss of consortium and companionship and other general and special damages in an amount to be determined by the jury at trial of this action.

## COUNT I
## STRICT LIABILITY

19. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 18 of the Complaint as though set forth at length herein.

20. The Remington Model 710 bolt action rifle, as designed, manufactured, sold and distributed by Defendants was in a defective condition, unreasonably dangerous to the user, consumer or bystander, their property and the public in general.

21. Jared Schueller used the rifle in a reasonably foreseeable manner.

22. The rifle as designed, manufactured, sold and distributed by Defendants was in substantially the same condition as when it was manufactured by Defendants.

23. The rifle was defective and unreasonably dangerous when it was sold by Defendants and at the time it left their possession and control.

24. Plaintiff Jared Schueller was injured as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

25. Plaintiffs' have suffered and are entitled to recover damages from Defendants as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

26. Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 770 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT II

### STRICT LIABILITY FAILURE TO WARN

27. Plaintiffs' incorporate herein by reference each and every allegation contained in Paragraphs 1 through 26 of the Complaint as though set forth at length herein.

28. The Remington Model 710 bolt action rifle was in a defective and unreasonably dangerous condition because of the failure to warn of its propensity to unexpectedly discharge without pulling the trigger and the failure to properly instruct about its care and maintenance.

29. Plaintiff had no knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge that injured Jared Schueller.

30. As a direct and proximate result of the failure to warn of the rifle's propensity to unexpectedly discharge without pulling the trigger and failure to properly instruct about its care and maintenance, Plaintiff has suffered and are entitled to recover damages from Defendants.

31. Defendants conduct in the failure to warn of the Remington Model 710 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT III

### NEGLIGENT DESIGN AND MANUFACTURE

32. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1 through 31 of the Complaint as though set forth at length herein.

33. Defendants negligently designed, manufactured, sold and distributed the Remington Model 710 bolt action rifle in its defective and unreasonably dangerous condition.

34. Defendants were negligent in one or more of the following respects:
   a. In designing a fire control with a "trigger connector";
   b. In designing a fire control with manufacturing tolerance build up;
   c. In designing a fire control that failed to include preset engagement between the trigger connector and the sear;

d. In designing a fire control that was susceptible to the accumulation of debris, lubrication build up, and/or the accumulation of rust;

e. In designing a fire control that was susceptible to adjustment;

f. In designing a fire control that was susceptible to the presence of manufacturing burrs or debris;

g. In designing a fire control that will fire without a pull of the trigger;

h. In designing a fire control that will fire when the safety is shifted from the "safe" to the "fire" position;

i. In designing a fire control that will fire when the bolt is cycled;

j. In designing a fire control that will "jar off";

k. In designing a fire control that uses improper materials, including "powdered metal" for the sear that are unusually susceptible to normal wear and tear;

l. In manufacturing a fire control that has burrs or manufacturing debris within the fire control;

m. In manufacturing a fire control without proper or adequate quality control procedures or checks;

n. In failing to warn users and handlers of the rifles of the potential for firings in the absence of a pull of the trigger;

o. In failing to warn users and handlers of the risks and hazards of improper maintenance of the rifle;

p. In failing to warn users and handlers of the risks and hazards of adjustment of the fire control;

q. In failing to inform or advise users and handlers of the proper procedures for maintenance of the rifle;

r. In failing to inform or advise users and handlers of the proper procedures for adjustments to the fire control.

35. As a direct and proximate result of Defendants' negligent design, manufacture, sale and distribution of the rifle, Plaintiff has suffered and is entitled to recover damages from Defendants.

36. Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 710 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive exemplary damages.

## COUNT IV

### NEGLIGENT FAILURE TO WARN

37. Plaintiff incorporates herein by reference each and every allegation set forth herein in Paragraphs 1 through 36 of the Complaint as though set forth herein.

38. Defendants' negligently failed to warn of the Remington Model 710 bolt action rifle's propensity to discharge unexpectedly without pulling the trigger and failed to properly instruct about its care and maintenance.

39. Plaintiff had no knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge which injured Jared Schueller.

40. As a direct and proximate result of Defendants' negligent failure to warn of the rifle's propensity to unexpectedly discharge and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendants.

41. Defendants' conduct in the design, manufacture, sale and failure to warn of the Remington Model 710 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights of safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## COUNT V

### SPOILATION OF EVIDENCE

42. Plaintiff incorporates herein by reference each and every allegation set forth herein in Paragraphs 1 through 41 of the Complaint as though set forth herein.

43. Defendants' knew that various items of evidence, including but not limited to customer

complaints, gun examination reports, committee minutes, internal memoranda, testing results, tested rifles, returned rifles and fire control systems removed from returned rifles would be relevant and probative, albeit damaging, in litigation regarding whether or not the Remington Model 710 bolt action rifle is defective and unreasonably dangerous.

44. Defendants' had a duty to preserve said evidence for use in litigation so that a fair and just resolution of the issues can be reached with all relevant evidence.

45. Defendants' breached their duty owed to Plaintiff in this litigation, as well as to other past and future Plaintiffs with similar claims, by destroying relevant evidence including, but not limited to that evidence set forth above.

46. Defendants' destroyed incriminating evidence with full knowledge of past, pending, and future claims regarding the Remington Model 700/710 so as to prevent Plaintiffs in this and other similar litigation from obtaining access to same.

47. Defendants' next adopted a written Record Retention Policy upon which they relied to destroy incriminating evidence based upon a stated destruction schedule with full knowledge that said evidence was relevant to past, pending, and future Remington Model 700/710 claims.

48. Defendants' destroyed relevant evidence in contravention of their Record Retention Policy. Defendants' knew that said evidence established that the Remington Model 700/710 is defective and that Defendants' knew of said defects.

49. Defendants' knew that if the evidence which has been destroyed was made available through the course of litigation discovery to Plaintiffs handling this and other similar Model 700/710 cases, Defendants' respective liability would be enhanced or confirmed, and their exposure to both actual and punitive damages would be significantly greater.

50. This destruction of relevant evidence occurred when legal proceedings regarding the Remington Model 700/710 were pending or reasonably foreseeable and after Defendants' knew of the defective condition of the Model 700/710 and its liability for same.

51. Defendants' conduct in destroying evidence was done with actual knowledge in order to avoid liability for both actual and punitive damages.

52. Defendants' conduct was reprehensible in that Defendants' intended to: deny Plaintiffs' a fair and impartial trial with all relevant evidence; defraud this Court and its officers; continue

the production of its defective Model 700/710 rifle; ignore the danger resulting from millions of Remington Model 700/710 rifles already in the hands of the general public; secure profits from their activities; and to generally deny justice to Plaintiff and others similarly situated.

53. American jurisprudence through the common law provides redress for grievances in this Court in the form of either; monetary damages assessed against Defendants' for the reduction in value of Plaintiff's claims or the increase in the cost of proving them as the result of the destruction of relevant evidence or equitable relief by striking Defendants' pleadings, prohibiting their arguments or resolving issues to which destroyed evidence would be probative in favor of Plaintiff; or whatever other action the court deems just and proper.

54. Plaintiff seeks monetary damages or in the alternative injunctive relief as the Court deems just and proper after review of the facts and the nature of evidence which has been destroyed.

WHEREFORE, Plaintiff prays for judgment against the Defendants' as follows:

    A.    For compensatory, special and general damages against the Defendants', jointly and severally, in a fair and reasonable amount as the jury deems just and equitable under the circumstances and commensurate with Plaintiff's losses, in excess of seventy-five Thousand Dollars ($75,000).

    B.    For exemplary or punitive damages against the Defendants', jointly and severally, in an amount necessary to deter or prevent similar conduct in the future.

    C.    For attorney's fees and costs incurred in this action as permitted by law.

    D.    For interest from the date of the accident as permitted by law.

    E.    For such further and additional relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff prays that the causes of action alleged herein be tried in this Court before a jury of their peers.

RESPECTFULLY SUBMITTED this 14th day of December, 2011.

**LAW OFFICE Of HAROLD BERGQUIST**

By: *Harold J. Bergquist*
HAROLD J. BERGQUIST ND #04806
322 2nd St W
Lakota, ND 58344
(701) 247-2970
blf@polarcomm.com


**MONSEES, MILLER, MAYER, PRESLEY & AMICK**
**A Professional Corporation**


By: _____
TIMOTHY W. MONSEES, MO # 31004
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
tmonsees@mmmpalaw.com
Tele:   816-361-5550
Fax:    816-361-5577